IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

CHARLES L. JARVIS,

      Plaintiff,

v.                                    CASE NO. 2:07-cv-00569

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.


PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Claimant's application for children's Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.

Plaintiff, Charles Lee Jarvis, Jr. (hereinafter referred to as "Claimant"), through his mother, Minnie Jarvis, filed an application for child's SSI benefits on May 14, 2004, alleging disability as of May 14, 2004, due to attention deficit hyperactivity disorder ("ADHD") and oppositional defiant disorder ("ODD"). (Tr. at 72-74, 84.) The claim was denied initially and upon reconsideration. (Tr. at 30-32, 35-37.) On March 4, 2005, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 38.) The hearing was held on May 4, 2006, before the Honorable Theodore J. Burock. (Tr. at 329-57.) By decision dated October 26, 2006, the ALJ determined that Claimant was not

entitled to benefits.  (Tr. at 13-27.)  The ALJ's decision became the final decision of the Commissioner on July 18, 2007, when the Appeals Council denied Claimant's request for review.  (Tr. at 4-6.)  On September 13, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

A child is disabled under the Social Security Act if he or she "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i).  Under the regulations in force during all times relevant to Claimant's claim, the ALJ must determine whether the child is engaged in substantial gainful activity.  20 C.F.R. § 416.924(b) (2006).  If the child is, he or she is found not disabled.  <u>Id.</u> § 416.924(a).  If the child is not, the second inquiry is whether the child has a severe impairment. <u>Id.</u> § 416.924(c).  An impairment is not severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations."  <u>Id.</u>  If a severe impairment is present, the third and final inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  <u>Id.</u> § 416.924(d).  If the claimant's impairment meets or

2

functionally equals the requirements of Appendix 1, the claimant is found disabled and is awarded benefits. <u>Id.</u> § 416.924(d)(1). If it does not, the claimant is found not disabled. <u>Id.</u> § 416.924(d)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 16.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of ADHD and ODD. (Tr. at 16.) At the third and final inquiry, the ALJ concluded that Claimant's impairments do not meet or functionally equal the level of severity of any listing in Appendix 1. (Tr. at 18-27.) On this basis, benefits were denied. (Tr. at 27.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Cellebreze</u>, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

Claimant's Background

Claimant was ten years old at the time of the administrative hearing. (Tr. at 337.) Claimant was in the fifth grade. (Tr. at 337.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

School Records

The record includes Claimant's school records. Claimant received As, Bs and Cs in the first, second and third grades. (Tr. at 77.) On January 3, 2002, an Intervention Report indicates that Claimant's teacher received a letter from Dr. Gilbert Goliath stating that Claimant had ADHD and needed a teacher's aide but not special education. The SAT committee determined that Claimant's behavior appeared as though he was not on medication. On January

17, 2002, the report further indicates that Claimant's medication was changed to time release and that Claimant "continues to do well in class since he has been placed on medication.  Regular Ed. reported an abrupt change in behavior between Thanksgiving and Christmas and medication was changed at that time."  (Tr. at 78.)  Single group counseling was to continue.  (Tr. at 78.)

On December 4, 2004, Claimant's fourth grade teacher, Michelle Wizowek, completed a teacher's questionnaire.  She indicated that Claimant's current instructional levels were at the fourth grade level for reading, math and written language.  (Tr. at 108.)  She stated that Claimant had no problem in most areas, and only a slight problem in comprehending and following oral instructions, providing organized oral explanations and adequate descriptions and expressing ideas in written form.  (Tr. at 109.)  Ms. Wizowek indicated that she had to implement behavior modification strategies, including moving Claimant's desk away from others because he bothers other students.  In addition, she noted that Claimant was not making friends.  (Tr. at 111.)  She also stated that Claimant gets angry and cries if things do not go his way, but that he had cried less lately and usually gets over things fairly easily.  She did not believe Claimant had to be mature at home. (Tr. at 113.)  Ms. Wizowek commented about Claimant as follows:

> I [met] C.J. in early Oct. when he returned to school after being sent to a hospital for 6 weeks.  He returned my first day of taking over for the teacher who quit. At first, he cried often.  He doesn't seem [to] do that

> very often any more.  He does get angry, but it is very
> manageable.
> His classwork is excellent!  His grades get better [and]
> better.  He often does as well or better than any other
> 4th grader.  He is proud of himself.
> His mother doesn't [seem] pleased with his success.  I
> keep telling her he is fine [and] how much better he is
> doing, but she just keeps giving me forms from Dr.'s
> [and] you all to fill out.
> She has said at a meeting he gets away with things at
> home [and] misbehaves at home.  At school, except for
> the  noises  that  bother  others  [and]  getting  mad
> sometimes he is fine.  Academically, I am quite pleased.

(Tr. at 115.)

The record includes Claimant's grades in the fourth grade.
Claimant received As, Cs, Ds and Es.  (Tr. at 130.)

On December 9, 2004, February 4, 2005, and March 2, 2005,
Claimant engaged in unspecified harassment/bullying/intimidation,
disrespectful behavior and harassment.  (Tr. at 157.)

On January 20, 2006, Claimant tried to bite another student on
the arm.  Claimant was not allowed to attend an upcoming school
event.  (Tr. at 157.)

On February 24, 2006, Claimant threatened to kill another
classmate over a disagreement.  Claimant wrote a note saying "kill"
and that the other student was stupid.  Claimant was required to
spend the next three recesses and the homework party in the office.
(Tr. at 157.)

On March 10, 2006, a teacher's disciplinary report indicates
that Claimant bit another child on the school bus.  (Tr. at 145,
157.)

A letter dated May 1, 2006, from Claimant's boy scout pack leader indicates that Claimant's behavior was very hard to manage. Claimant "is constantly out of his seat.  He makes strange noises and has defiant behaviors.  He does not respond to reprimands, nor praise.  He has to be excluded from meetings at times, when his behavior does not improve."  (Tr. at 131.)

Claimant's fifth grade teacher, Mary Colston, indicated on May 3, 2006, that Claimant was not in special education.  (Tr. at 136.) Regarding Claimant's ability to attend to and complete tasks, Ms. Colston stated that Claimant had a serious problem paying attention when spoken to directly, focusing long enough to finish an assigned activity or task, refocusing to task when necessary, completing class/homework assignments, working without distracting others and working at a reasonable pace/finishing on time.  (Tr. at 138.)  She stated that Claimant plays with papers or doodles instead of working.  If items that distract him are taken away, he obsesses about them instead of focusing on a given task.  (Tr. at 138.)  Ms. Colston implemented behavioral modification strategies, including a reward system or free doodle time if Claimant completed an assignment correctly without distracting others.  (Tr. at 139.) Ms. Colston reported that Claimant refused to walk from one place to the next, he insisted on bouncing or hopping while making a springing noise.  (Tr. at 140.)  Finally, Ms. Colston stated that Claimant "does not fit in with his classmates or other 5th graders.

7

He is very shy [and] withdrawn.  He always picks his nose [and] eats the 'findings.' Parents have called [and] requested that their children not sit next to CJ."  (Tr. at 135.)

On May 10, 2006, Claimant was approved for Section 504 eligibility related to his ADHD and was to receive services to improve social skills.  (Tr. at 154-56.)

Medical Evidence

On August 3, 2004, Kelly Rush, M.A., supervised by Lisa C. Tate, M.A., examined Claimant at the request of the State disability determination service.  Claimant was enrolled in regular education classes and received average grades.  (Tr. at 203.) Claimant's attitude was fair and his behavior was cooperative during the examination.  His mood was euthymic and his affect was broad and reactive.  Immediate memory, recent memory and remote memory were all within normal limits.  Concentration and attention were mildly deficient.  (Tr. at 204-05.)  Ms. Rush diagnosed Claimant with ADHD, combined, disruptive behavior disorder, not otherwise specified on Axis I and made no Axis II diagnosis.  (Tr. at 205.)    On August 28, 2004, a State agency medical source completed a Childhood Disability Evaluation form on which he indicated that Claimant's impairments, ADHD and disruptive behavior disorder, were severe, but do not meet or medically or functionally equal the Listings.  (Tr. at 207.)

The record includes treatment notes from Gilbert Goliath, M.D.

8

dated October 4, 1999, through October 20, 2004. (Tr. at 213-48.) Claimant was treated for ADHD. (Tr. at 230.)

The record includes treatment notes and other evidence from Prestera Center for Mental Health Services, Inc. dated May 17, 2004, through January 19, 2005. (Tr. at 249-65.) On May 17, 2004, Jeffrey Priddy, M.D. examined Claimant, who was eight years old. Claimant's mother reported that Claimant had been very clingy and emotional. Claimant's mother stated that her authority over Claimant was undermined when Claimant's father was at home and that Claimant began the school year receiving As, but that his grades had gone down over the last nine weeks. Dr. Priddy observed that Claimant seemed a little hyperactive and fidgety in his seat, but was very polite. Dr. Priddy diagnosed ADHD, oppositional-defiant disorder features and rule out anxiety disorder, not otherwise specified on Axis I, but he made no Axis II diagnosis. He rated Claimant's GAF at 60-65. Dr. Priddy recommended individual therapy and prescribed Adderall. (Tr. at 264.)

The record includes pharmacological management notes from Process Strategies. The notes contain the signatures of Dr. Priddy and a registered nurse. On June 11, 2004, Claimant was moody and aggressive, but Claimant had some improvement at school with medication. (Tr. at 259.) On July 29, 2004, the notes indicate Claimant hit his mother when she asked him to change his shirt. Claimant had not received his Risperdal at night and was instructed

to resume taking it then.  (Tr. at 257.)  On August 19, 2004,
Claimant was very impulsive and distractable and reported headaches
when using Risperdal.  However, Claimant's mother noted that it was
calming Claimant down.  (Tr. at 254.)  On September 10, 2004,
Claimant had increasing behavioral problems at school and home and
Claimant's parents seemed unable to deal with his behavior.
Claimant was admitted to the innerchange program, and his Adderall
was increased. (Tr. at 252-53.) On October 15, 2004, Claimant had
a new teacher and was not adjusting easily.  Claimant also
complained of headaches.  (Tr. at 250.)

On January 26, 2005, a State agency medical source completed
a Childhood Disability Evaluation Form and opined that Claimant's
impairments were severe, but that they did not meet, medically
equal or functionally equal the Listings.  (Tr. at 266-71.)

On March 22, 2006, George M. Damous, M.A. completed a Child
Functional Assessment and opined that Claimant had marked
limitation in attending and completing tasks and in interacting and
relating with others.  Mr. Damous wrote that Claimant "is
oppositional and defiant.  He attempts to escape tasks with
immature and childish wimpering and behavior.  His intellectual
functioning is in the high average to superior range." (Tr. at
284.)

On April 3, 2006, Mareda Reynolds, M.A. examined Claimant at
the request of Claimant's counsel.  Claimant's father reported that

Claimant was hospitalized for two weeks in 2004, for the treatment of depression and received counseling for four weeks in 2004 related to the depression.  Claimant was not currently receiving therapy or counseling services. (Tr. at 287.)  Claimant's social interaction was severely deficient.  His mood was expansive, and his affect was broad and appropriate to expressed ideas. Claimant's insight was fair, and his judgment was adequate. Recent memory was moderately deficient.  Immediate memory was within normal limits and remote memory was fair.  Concentration and attention were mildly deficient.  (Tr. at 288.)  Ms. Reynolds diagnosed attention deficit/hyperactivity disorder, combined type on Axis I and made no Axis II diagnosis.  (Tr. at 290.)

Ms. Reynolds completed an assessment on which she opined that Claimant had marked limitation in social abilities and personal/behavioral problems and moderate limitations in concentration, persistence and pace.  (Tr. at 293.)

The record includes additional pharmacological management notes from Process Strategies dated April 4, 2005, through February 6, 2006.  (Tr. at 295-304, 312-19.)  On April 4, 2005, Claimant had not had his medication and was bouncing off the walls.  Claimant's parents denied medication side effects.  Claimant's medication included Adderall, Trileptal and Prozac.  The Prozac prescription was increased.  (Tr. at 321.)  On May 9, 2005, Claimant was unable to settle down and refused to listen.  It was reported that

Claimant was out of control at home and school and was hitting and biting family members.  Claimant was referred for hospitalization. (Tr. at 318-19.)  On June 1, 2005, Claimant was much calmer since his eight-day hospitalization. (Tr. at 316-17.)  On June 29, 2005, Claimant's reported mood was okay.  Claimant was preparing to start school and also planned to see George Damous. (Tr. at 314-15.)  On August 23, 2005, Claimant was doing better and had been discharged from innerchange. (Tr. at 312-13.)  On October 3, 2005, Claimant had some "meltdown" behavior in the evening with his mother. Claimant was doing well in school. (Tr. at 303.)  On December 9, 2005, Claimant's problems had increased and he was engaging in regressive behavior.  Claimant's grades were very poor.  His sleep and appetite were okay.  Claimant's Adderall was increased. (Tr. at 301-02.)  On December 28, 2005, it was reported that Claimant was sad and cried a lot.  Claimant was prescribed Lexapro. (Tr. at 299-300.)  On January 9, 2006, Claimant's mood was better, but he was still very whiny and did not take his medication well. Claimant could not tolerate the Lexapro because it affected his sleep. (Tr. at 297.)  Claimant was prescribed liquid compounded medications. (Tr. at 298.)  On February 6, 2006, it was reported that Claimant was very immature and not listening at home. Claimant was prescribed Risperadal. (Tr. at 296.)

On March 27, 2006, Dr. Priddy completed a Child Functional Assessment on which he opined that Claimant had marked limitations

in attending and completing tasks, interacting and relating with others and caring for himself.  (Tr. at 305-06.)

The record includes a Master Individualized Service Plan dated May 5, 2005.  (Tr. at 308-11.)

The record includes treatment notes from Dr. Goliath dated February 10, 2005, and June 27, 2005.  (Tr. at 322-23.)

The record includes the discharge summary from Claimant's hospitalization at Highland Hospital from May 9, 2005, through May 17, 2005.  Claimant presented for admission with deteriorating behavior.  He had been acting like a dog and was trying to bite his mother, talking like a baby and laughing continuously for two weeks.  Claimant reported hearing voices at school and on the day of admission.  During his hospitalization, Claimant denied hearing voices, but was observed smiling inappropriately during conversations and was impulsive and required frequent redirection to listen and remain on task.  Claimant acted like an animal on several occasions and reported that he had a tail.  With medication, Claimant's hyperactivity decreased and he had fewer incidents of baby talk, animal imitations and disruptive behavior. Claimant denied medication side effects.  Claimant's discharge diagnoses included ADHD, combined type and oppositional defiant disorder on Axis I.  There was no Axis II diagnosis.  Claimant's GAF on discharge was 60.  Claimant's medications on discharge included Adderall and Trileptal.  (Tr. at 324-25.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) Claimant meets Listing 112.11; and (2) the ALJ erred in discounting the testimony and evidence from Mrs. Jarvis, the treating physician and other credible sources of record. (Pl.'s Br. at 3-13.)

The Commissioner argues that (1) the record shows that Claimant cannot satisfy all the elements of Listing 112.11; and (2) the ALJ complied with the regulations when he found that Claimant and his mother were not entirely credible. (Def.'s Br. at 8-15.)

Claimant first argues that the ALJ erred in failing to find that he meets Listing 112.11 because he has marked limitations in two areas. Claimant asserts that the ALJ erred in not affording controlling weight to the opinions of Claimant's treating sources, Dr. Priddy and Mr. Damous, both of whom opined that Claimant had marked limitations. (Pl.'s Br. at 4-8.)

Listing 112.11 provides as follows:

112.11 Attention Deficit Hyperactivity Disorder: Manifested by developmentally inappropriate degrees of inattention, impulsiveness, and hyperactivity.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

A. Medically documented findings of all three of the following:

1. Marked inattention; and
2. Marked impulsiveness; and
3. Marked hyperactivity;

And

14

B. For older infants and toddlers (age 1 to attainment of age 3), resulting in at least one of the appropriate age-group criteria in paragraph B1 of 112.02; or, for children (age 3 to attainment of age 18), resulting in at least two of the appropriate age-group criteria in paragraph B2 of 112.02.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11 (2006).

The applicable provisions of Listing 112.02(B)(2) provide as follows:

112.02 Organic Mental Disorders: Abnormalities in perception, cognition, affect, or behavior associated with dysfunction of the brain. The history and physical examination or laboratory tests, including psychological or neuropsychological tests, demonstrate or support the presence of an organic factor judged to be etiologically related to the abnormal mental state and associated deficit or loss of specific cognitive abilities, or affective changes, or loss of previously acquired functional abilities.

The required level of severity for these disorders is met when the requirements in both A and B are satisfied.

*       *       *

B. Select the appropriate age group to evaluate the severity of the impairment:

*       *       *

2. For children (age 3 to attainment of age 18), resulting in at least two of the following:

a. Marked impairment in age-appropriate cognitive/communicative function, documented by medical findings (including consideration of historical and other information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized psychological tests, or for children under age 6, by appropriate tests of language and communication; or

15

b. Marked impairment in age-appropriate social functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, the results of appropriate standardized tests; or

c. Marked impairment in age-appropriate personal functioning, documented by history and medical findings (including consideration of information from parents or other individuals who have knowledge of the child, when such information is needed and available) and including, if necessary, appropriate standardized tests; or

d. Marked difficulties in maintaining concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.02(B)(2) (2006).

Thus, to meet the applicable Listing 112.11, Claimant must show medically documented evidence of ADHD, marked inattention, marked impulsiveness and marked hyperactivity, and have marked limitations in two of four areas: cognitive/communicative function, social functioning, personal functioning or in maintaining concentration, persistence and pace. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 112.11 and 112.02(B)(2) (2006).

In his decision, the ALJ concluded that Claimant did not have an impairment or combination of impairments that meets or equals a listing. (Tr. at 18.) The ALJ did not specifically address Listing 112.11. However, in evaluating the six domains to be considered in determining functional equivalence, acquiring and using information, attending and completing tasks, interacting and relating with others, moving about and manipulating objects, caring

16

for yourself and health and physical well being, the ALJ found that
Claimant had a marked limitation only in the area of interacting
and relating to others.  See 29 C.F.R. § 416.926a (2006).

Regarding Claimant's ability in attending to and completing
tasks, the ALJ determined that Claimant had a less than marked
limitation in this area.  (Tr. at 23.)

The regulations define this domain as follows:

(h) Attending and completing tasks. In this domain, we
consider how well you are able to focus and maintain your
attention, and how well you begin, carry through, and
finish your activities, including the pace at which you
perform activities and the ease with which you change them.
(1) General.
(i)  Attention  involves  regulating  your  levels  of
alertness and initiating and maintaining concentration.
It involves the ability to filter out distractions and to
remain focused on an activity or task at a consistent
level of performance. This means focusing long enough to
initiate and complete an activity or task, and changing
focus once it is completed. It also means that if you
lose or change your focus in the middle of a task, you
are able to return to the task without other people
having to remind you frequently to finish it.
(ii) Adequate attention is needed to maintain physical
and mental effort and concentration on an activity or
task. Adequate attention permits you to think and reflect
before starting or deciding to stop an activity. In other
words,  you  are  able  to  look  ahead  and  predict  the
possible  outcomes  of  your  actions  before  you  act.
Focusing your attention allows you to attempt tasks at an
appropriate pace. It also helps you determine the time
needed to finish a task within an appropriate timeframe.

***

(iv) School-age children (age 6 to attainment of age 12).
When you are of school age, you should be able to focus
your attention in a variety of situations in order to
follow directions, remember and organize your school
materials,  and  complete  classroom  and  homework
assignments. You should be able to concentrate on details

17

and not make careless mistakes in your work (beyond what would be expected in other children your age who do not have impairments). You should be able to change your activities or routines without distracting yourself or others, and stay on task and in place when appropriate. You should be able to sustain your attention well enough to participate in group sports, read by yourself, and complete family chores. You should also be able to complete a transition task (e.g., be ready for the school bus, change clothes after gym, change classrooms) without extra reminders and accommodation.

\* \* \*

(3) Examples of limited functioning in attending and completing tasks. The following examples describe some limitations we may consider in this domain. Your limitations may be different from the ones listed here. Also, the examples do not necessarily describe a "marked" or "extreme" limitation. Whether an example applies in your case may depend on your age and developmental stage; e.g., an example below may describe a limitation in an older child, but not a limitation in a younger one. As in any case, your limitations must result from your medically determinable impairment(s). However, we will consider all of the relevant information in your case record when we decide whether your medically determinable impairment(s) results in a "marked" or "extreme" limitation in this domain.
(i) You are easily startled, distracted, or overreactive to sounds, sights, movements, or touch.
(ii) You are slow to focus on, or fail to complete activities of interest to you, e.g., games or art projects.
(iii) You repeatedly become sidetracked from your activities or you frequently interrupt others.
(iv) You are easily frustrated and give up on tasks, including ones you are capable of completing.
(v) You require extra supervision to keep you engaged in an activity.

29 C.F.R. § 416.926a(h) (2006).

In his decision, the ALJ stated that Claimant's limitations were less than marked in this domain for the following reasons:

[o]n the Teacher's Questionnaire dated December 4, 2004, Ms. Wezoureh [sic], reported that the claimant has

18

problems organizing his own things or school materials
and has difficulties working without distracting self or
others. (Exhibit 6E). On the Function Report dated June
7, 2004, Ms. Jarvis noted that the claimant keeps busy on
his own, works on arts and craft projects (draws, paints,
knits, and does woodwork), and completes housework.
(Exhibit 4E). On August 3, 2004, Ms. Tate and Ms. Rush
noted that the claimant's attention and concentration
were mildly deficient and persistence and pace were
within normal limits. (Exhibit 1F). On April 3, 2006,
Ms. Reynolds noted that the claimant's attention and
concentration were mildly deficient; persistence and pace
were adequate. The results of the claimant's achievement
testing show he did fairly well, which indicates his
attention and concentration do not interfere to any
significant extent with functioning in regard to
academics. (Exhibit 12F). School records (504 Plan)
from Kanawha County Board of Education shows the claimant
needs monitoring and redirection as needed. The record
shows the claimant needs to repeat direction and maintain
an assignment notebook. (Exhibit 14E).

(Tr. at 23.)

Earlier in his decision, the ALJ addressed the weight to be
afforded the various medical opinions of record. The ALJ
acknowledged that the two State agency sources did not have the
benefit of all the medical evidence of record and, apparently,
therefore determined their opinions were entitled to little weight.
(Tr. at 20.) The ALJ further explained that he did not "adopt Mr.
Damous' opinion entirely." (Tr. at 20.) Mr. Damous, a licensed
psychologist, opined that Claimant had marked limitations in
attending and completing tasks and interacting and relating with
others. (Tr. at 20.) The ALJ further stated that he afforded
little weight to the opinion of Ms. Reynolds, a licensed
psychologist, who conducted a consultative examination and opined

19

that Claimant had marked limitation in social abilities and personal behavioral problems. (Tr. at 20.) The ALJ stated that he rejected the opinion of Dr. Priddy, Claimant's treating psychiatrist, who opined that Claimant had marked limitations in attending and completing tasks, interacting and relating to others and caring for himself, because his opinion was "not supported by school records, achievement testing or Dr. Priddy's own treatment notes." (Tr. at 21.)

The court proposes that the presiding District Judge find that the ALJ's decision is not supported by substantial evidence because the evidence of record is not complete.

At the administrative hearing, Claimant's counsel agreed to obtain several pieces of evidence that were not contained in the file, including additional school records, records from Mr. Damous and prescription medication records. (Tr. at 356.) It appears that Claimant's counsel obtained and submitted some of that evidence, including school records (Tr. at 154-201) and prescription records (Tr. at 146-47).

However, Claimant's counsel did not submit records from Mr. Damous, and the court can find no explanation in the record as to why this evidence was not submitted, if it even exists. In addition, there are several instances in the record which mention an extended psychiatric hospitalization in October of 2004, but this evidence also is not in the record. (Tr. at 115, 252-53,

287.)

The court is troubled by the rejection of Mr. Damous's opinion on the basis that underlying treatment records were not provided in light of the fact that Mr. Damous's treating source opinion is consistent with that of Claimant's treating psychiatrist, Dr. Priddy, i.e., both opined that Claimant has marked limitations in two domains. If these opinions were accepted, Claimant would functionally equal the Listings by having marked limitations in two domains of functioning and, also, could possibly meet Listing 112.11, as Claimant argues. Although the ALJ has a duty to develop the record, it is Claimant's responsibility to prove to the Commissioner that he is disabled. Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). 20 C.F.R. § 416.912(a) (2006). It is unclear to the court as to why Claimant did not submit this evidence. Regardless, the court simply cannot recommend that the ALJ's decision is supported by substantial evidence in the face of an incomplete record.

The court further proposes that the presiding District Judge find that the ALJ's determination that Claimant does not have a marked limitation in the domain of attending to and completing tasks is not supported by substantial evidence because the ALJ does not address significant evidence of record suggesting that Claimant has more serious limitations in this area. As noted above, there are issues about whether the record is complete, and these issues

21

certainly bear on whether the ALJ's rejection of the opinion of Mr. Damous and Dr. Priddy that Claimant had a marked limitation in this area was justified.   In addition, the ALJ does not address the opinion of Claimant's fifth grade teacher, Ms.  Colston, about Claimant's abilities in this domain.

The court declines to address the remaining arguments raised by Claimant.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge REVERSE the final decision of the Commissioner, and REMAND this case for further proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363, 1366 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 155 (1985); <u>Wright v. Collins</u>, 766 F.2d 841, 846 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

<u>  February 23, 2009  </u>
        Date

Mary E. Stanley
United States Magistrate Judge